# KOBRE & KIM

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
WWW.KOBREKIM.COM
TEL +1 212 488 1200

October 7, 2021

**BY ECF**

Honorable Diane Gujarati
United States District Judge
United States District Court
Eastern District of New York
Brooklyn, New York 11201

Re:   *United States v. Gentile, et al.,*
      **21 Cr. 054 (DG)**

Dear Judge Gujarati:

Defendant David Gentile respectfully submits this letter in opposition to the Government's letter motion ("Motion" or "Mot.") seeking an order pursuant to Federal Rule of Evidence 502(d) permitting the production of more than 146,000 potentially privileged and potentially unresponsive documents that were seized from the offices of GPB Capital Holdings, LLC ("GPB") (the "Potentially Privileged Materials") to all of the defendants without the consent of GPB and the privilege holders.[1] As described below, Mr. Gentile and co-defendant Jeffry Schneider have more than a good faith basis to believe that the Potentially Privileged Materials include documents over which they can assert a claim of privilege and object to the compelled disclosure to third parties. As the seizure of privileged materials from GPB was never authorized by the Search Warrants, the Government has no production obligations related thereto, and the Court therefore should order that those materials be returned to GPB. Defendant Jeffry Schneider joins in this opposition.

While the Motion goes to great lengths to argue that Messrs. Gentile and Schneider have no basis to assert privilege over any number of the more than 146,000 potentially privileged documents, the facts set forth below and the Government's mishandling of its review make clear that it has no basis to dispute Mr. Gentile or Mr. Schneider's potential (and indeed likely) status as privilege holders. Put simply, according to the Government, the prosecution team has not seen the Potentially Privileged Materials and, thus, cannot know if those Materials reflect

---

[1] All capitalized terms herein, unless otherwise defined, have the meaning ascribed to them in the Government's Motion.

AMERICAS (NEW YORK, BUENOS AIRES, CHICAGO, DELAWARE, MIAMI, SAN FRANCISCO, SÃO PAULO, WASHINGTON DC)
ASIA-PACIFIC (HONG KONG, SEOUL, SHANGHAI), EMEA (LONDON, TEL AVIV), OFFSHORE (BVI, CAYMAN ISLANDS)

KOBRE & KIM REFERS TO KOBRE & KIM LLP, A NEW YORK LIMITED LIABILITY PARTNERSHIP.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 2

communications covered by individual or common interest privileges held or shared by Messrs. Gentile and Schneider. To compound this issue, the Government also has been unwilling to have the Filter Team provide any detail about the Potentially Privileged Materials (including the terms used to isolate those documents) to Defendants. Indeed, as of the date of this Opposition, the defense has no visibility into what (if anything) the Filter Team did beyond collect the Potentially Privileged Materials and prepare them for production.[2]

Accordingly, the Court should deny the Motion and order the return of the Potentially Privileged Materials to GPB, or, in the alternative, direct the Government to undertake a proper review process as set forth below in Section III(C).

## I.    Factual Background

### A.    Defendants' Relationship with GPB

Mr. Gentile founded GPB in 2013 and has served as its Chief Executive Officer and Chairman of the managing company's Board until earlier this year. Mr. Gentile has been and remains GPB's sole member and 100% owner. GPB is a registered investment adviser to private equity funds. According to the Indictment, the funds were marketed to independent broker-dealers and registered investment advisers by two entities who, in turn, used Mr. Schneider's company, Ascendant Capital, LLC ("Ascendant") as a placement agent to market the funds.

In the early years, GPB had only a handful of employees and relied heavily on outside advisors and counsel who were often retained by Mr. Gentile. From 2013 through February 2019 (when the Search Warrants were executed), GPB and Mr. Gentile retained dozens of attorneys with whom he frequently interacted. As one would expect with the sole member and CEO of a small company, Mr. Gentile and GPB often sought advice from the same attorneys.

---

[2] In an effort to resolve this issue without intervention of the Court, the defense proposed having the Filter Team prepare a privilege log that would permit the parties to narrow the areas of dispute (e.g., to allow Messrs. Gentile and Schneider to identify those materials over which they believe they have a valid claim of privilege). The Government declined to do so, and now in its Motion claims that such a procedure would be "unfair" to the Government because of the sheer volume of unspecified and unidentified potentially privileged materials, many of which are likely to be irrelevant to this case and unresponsive to the Search Warrants. (Mot. at 8.) There is nothing "unfair" about this proposal as this is a situation of the Government's own making. As the Motion makes clear, attorneys for GPB were present during the searches of the premises at issue. The Government thus could have run searches at the time the seizure was done or requested that the attorneys search the materials and segregate out any potentially privileged materials. Instead, the Government made the decision to seize everything—regardless of whether the materials were privileged or called for under the terms of the Search Warrants—and then tried to sort it out after the fact. Against this backdrop, the only thing that would be "unfair" is for the Government to continue to shift the burden to the defense to determine what is or is not discoverable and what may or may not be covered by privilege, while also trampling on the Defendants' own privilege.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 3

In March 2018, a former operating partner sued by GPB accused GPB of wrongdoing similar to the allegations in the Indictment (i.e., that its disclosures, as contained in GPB and Ascendant materials, were misleading investors). Those accusations led to the initiation of numerous state and federal investigations and private civil actions against GPB, Mr. Gentile, Mr. Schneider, and others. As co-defendants in these numerous actions, Mr. Gentile and Mr. Schneider have been and continue to be in a joint defense agreement with each other and with GPB as each ultimately retained their own counsel to defend against those actions.

**B.    The Government's Search and Seizure of Privileged Documents**

On February 28, 2019, the Government executed three search warrants: two at GPB's offices in New York, New York, and Garden City, New York; and one at AlphaServe Technologies, 104 West 40th Street, New York, New York. The Search Warrants authorized the seizure of certain records relating to alleged violations of specified crimes "involving managers and employees of GPB and Ascendant, including but not limited to, David Gentile and Jeffrey [sic] Schneider." They did not authorize the seizure of any privileged documents, nor did they specify requirements for the subsequent treatment of any seized privileged documents.

On January 29, 2021, a grand jury from the Eastern District returned the Indictment, which was unsealed on February 4, 2021. Counsel for Messrs. Gentile and Schneider met and conferred with the Government in April 2021 and objected to the Government's process for isolating privileged documents, which did not use search terms and attorney names from Mr. Gentile or Mr. Schneider.

**C.    Discovery to Date**

To date, the Government has produced approximately 6.6 million documents to Defendants. Several of those documents were improperly Bates stamped, requiring the Government to now reproduce the bulk of the documents, at substantial cost to Defendants. In March and April 2021, the Government produced approximately 492,000 documents that it seized from GPB's offices in connection with the Search Warrants. Almost five months later, the Government informed Defendants for the first time that, in its view, only 2,000 of those 492,000 documents were actually within the scope of the Search Warrants authorizing their seizure. It has made no attempt to claw back the 490,000 improperly produced documents.[3]

---

[3] Mr. Gentile and Mr. Schneider each reserve their rights to challenge the legality of the Search Warrants, the manner in which they were obtained, the Government's execution thereof, and the Government's subsequent production to all defendants of hundreds of thousands of documents that it was not authorized to seize under the Search Warrants, including but not limited by moving to suppress based upon the Government exceeding the scope of the warrant and improperly seizing documents. *See, e.g.*, *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017). For example, based upon the Government's application for the Search Warrants, the Warrants purport to authorize the seizure of laptop computers from only three named individuals, along with

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 4

The Government represents that it has more than 146,000 potentially privileged documents that it seized from GPB's offices. As a threshold matter, the Government is not legally in possession of (and thus has no obligation to disclose) these privileged documents since the Search Warrants did not authorize their seizure. But even if it did have a constitutional obligation to produce all *Brady* material, regardless of privilege and regardless of whether it had judicial approval to seize those documents, then the Government must take the steps necessary to fulfill that disclosure obligation by adequately educating the Filter Team about the facts of this case, and indeed has had over two years to do so. The Government has now been in possession of the Potentially Privileged Materials for more than 31 months. In that time, the Government apparently failed to devise a plan to review or return those documents before it raised its issues for the first time with the Court on September 9, 2021.

## II.   Applicable Law

Corporate officers may invoke the attorney-client privilege in their individual capacity for communications with counsel for the company when those communications involve "personal matters." *See, e.g.*, *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 119 F.3d 210, 215-16 (2d Cir. 1997). To satisfy this standard, courts in the Second Circuit have required that: "(1) the employee must seek or receive legal advice, and (2) that advice must relate to the individual's interests, as opposed to the corporation's." *United States v. Daugerdas*, 757 F. Supp. 2d 364, 370 (S.D.N.Y. 2010).

Individual officers may also have a privilege claim based on the joint defense or common interest privilege, when an otherwise privileged communication "pass[es] from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Krug*, 868 F.3d 82, 86-87 (2d Cir. 2017) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (finding the common interest "doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise"). The common interest rule further provides that the privilege "cannot be waived without the consent of all parties to the privilege." *United States v. Napout*, No. 15-CR-252 (S-1) (PKC) (RML), 2017 WL 980323, at *2 (E.D.N.Y. Mar. 10, 2017) (quoting *United States v. Weissman*, No. 94-CR-760 (S1), 1996 WL 737042, at *26 (S.D.N.Y. Dec. 26, 1996)).

## III.   Argument

### A.   The Court Should Not Compel the Disclosure of the Potentially Privileged Materials without the Consent of All of the Relevant Privilege Holders

The Second Circuit has made clear that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established

---

unspecified "others," which only heightens the concerns about potential responsiveness, relevance, and privilege issues at play here and will likely inform further motion practice before this Court.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 5

precedent."[4] *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001); *see also Chase Manhattan Bank, N.A. v. Turner & Newhall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992) (finding it necessary to grant petition for a writ of mandamus to address "significant and important issues . . . relating to the attorney-client privilege" and vacating magistrate's order that required the production of potentially privileged documents). This is not a case where the parties are disputing the privileged nature of these documents. Thus, there must be a waiver or some other exception to warrant the Government's requested relief.

The Government cited both *United States v. Weisberg* and *United States v. Sattar* for the proposition that its *Brady* obligations may outweigh a party's "right to assert privilege." *See* Mot. at 4-5 (citing *United States v. Weisberg*, No. 8-CR-347 (NGG) (RML), 2011 WL 1327689, at *4-5 (E.D.N.Y. Apr. 5, 2011), and *United States v. Sattar*, No. 2-CR-395 (JGK), 2003 WL 22137012, at *17 (S.D.N.Y. Dec. 20, 2010)). Yet in both cases, the courts acknowledged that "the Supreme Court left open the question of whether [the privilege] may be overcome 'in exceptional circumstances,' by a criminal defendant's constitutional right to present a defense." *Weisberg*, 2011 WL 1327689, at *5 (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998) (requiring in camera review of each item in question to determine privilege and any exceptional circumstance requiring disclosure); *Sattar*, 2003 WL 22137012, at *17. The Government has not alleged any applicable exception to the general rule preventing disclosure, let alone "exceptional circumstances" warranting that result. Indeed, two of the three defendants have explicitly requested that the materials not be produced.

The imposition of the Rule 502(d) order requested by the Government does not alter the analysis, as "a protective order is an inadequate surrogate for the privilege." *In re Dow Corning Corp.*, 261 F.3d at 284 (finding district court should not have compelled disclosure of privileged communications even after issuing an order protecting the disclosure from waiver). This is neither the purpose of nor power granted by Rule 502(d). *See Winfield v. City of New York*, No. 15-CV-05236 (LTS) (KHP), 2018 WL 2148435, at *4 (S.D.N.Y. May 10, 2018) ("Rule 502(d) does not authorize a court to require parties to engage in 'quick peek' and 'make available' productions and should not be used directly or indirectly to do so." (citing *The Sedona Conference Commentary on*

---

[4] The Potentially Privileged Materials likely also include materials protected by the attorney work product doctrine, which the Supreme Court has characterized as "even more vital" to "the proper functioning of the criminal justice system." *The Mercator Corp. v. United States*, 318 F.3d 379, 384 (2d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Any such documents only require production where the party seeking discovery has shown a "substantial need" for the materials and is unable to obtain them by other means. *See, e.g.*, *id.* at 383. None of the defendants here has asserted a substantial need for these documents. Again, the Government has no basis to dispute Mr. Gentile's or Mr. Schneider's potential (and indeed likely) claims to protection under the attorney work product doctrine. But, because the Government has refused to provide even categorical descriptions of the Potentially Privileged Materials, Messrs. Gentile and Schneider have no way of making either the necessary particularized showing to claim work product protection or to show a "substantial need" for documents over which it is not a privilege holder.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 6

*Privacy and Information Security: Principles and Guidelines for Lawyers, Law Firms, and Other Legal Service Providers*, 17 SEDONA CONF. J. 1, 137 (2016))); *see also U.S. Equal Emp. Opportunity Comm'n v. George Washington Univ.*, No. 17-CV-1978 (CKK) (GMH), 2020 WL 3489478, at *10 (D.D.C. June 26, 2020) ("It is clear, then, that Rule 502(d) does not supersede controlling case law forbidding a court from compelling disclosure of protected information "absent waiver or other applicable exception."). Compelling the disclosure of privileged material, even with protection from waiver, forces privilege holders to ring a bell that cannot be un-rung. *See The Sedona Conference Commentary on Privacy and Information Security*, 17 SEDONA CONF. J. at 136 ("[E]ven though a Rule 502(d) order can require return of [] privileged documents and ensure there is no waiver, once it is produced, the opposing party knows its contents.").

In the only case the Government cited where the Court entered a Rule 502(d) stipulation, all of the parties consented to that production. *See* Stipulation and Order, *United States v. Nordlicht*, 16-CR-640 (BMC) (E.D.N.Y. Nov. 11, 2017), ECF No. 246. Here, not only do two of the three defendants object to this production, based on our conversations with counsel for GPB, there appears to be confusion about the full contours and specifics of their position. Rather than rely on the parties' independent communications with GPB counsel and to ensure the Court is relying on accurate information, we respectfully request that the Court seek confirmation directly from GPB counsel in writing as to its understanding and position that can be made part of the record. The more applicable precedent in the Eastern District is *United States v. Metter*, in which the government proposed the same workaround it does here—the production of seized documents to all defendants without first reviewing them for responsiveness or privilege. 860 F. Supp. 2d 205 (E.D.N.Y. 2012). The *Metter* court not only rejected the government's proposal, stressing that the "government has a duty to make its own determination," but also found that the government had acted in bad faith in failing to fulfill its duty of review in a timely manner. *Id.* at 211 (finding the government lacked good faith in failing to review documents for responsiveness and privilege more than *15 months* after seizure—less than half of the time that has elapsed here); *see also United States v. Hall*, No. 3:18-CR-623-S, 2020 WL 7027473, at *4 (N.D. Tex. Nov. 30, 2020) (rejecting government's proposal to produce seized privileged documents to all defendants pursuant to a 502(d) order and noting "such an order falls outside the bounds of Rule 502(d) and diminishes the importance of the privilege").

As in *Metter* and *Hall*, the Court should not permit the Government to trample on the critical protection provided by the attorney-client or other applicable privileges over the objection of Messrs. Gentile and Schneider, as parties and potential privilege holders, merely to relieve the Government of production obligations that even the Government concedes are at best questionable. Instead, the Court should order the return of the Potentially Privileged Materials to GPB, as suggested by the Government in the alternative.[5]

---

[5] Ample authority suggests that the Government was never lawfully in possession of and must return the Potentially Privileged Materials to GPB, because the Search Warrants did not authorize seizure of privileged material. *See, e.g.*, *Doane v. United States*, No. 8-MAG-0017 (HBP), 2009 WL 1619642, at *10 (S.D.N.Y. June 5, 2009) ("[E]ven where practical considerations permit the Government to seize items that are beyond the scope of the warrant, once the fruits of the search

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 7

**B.      Defendants Gentile and Schneider Have a Good-Faith Basis to Believe They Are Privilege Holders and Do Not Consent to the Disclosure**

Messrs. Gentile and Schneider have a good-faith basis to believe that they are privilege holders for at least some subset of the Potentially Privileged Materials and do not consent to the *carte blanche* production of unspecified, but nevertheless potentially privileged, documents to the other defendants. Messrs. Gentile and Schneider recognize that the privilege holder typically has the burden of establishing the elements of attorney-client privilege. But, despite repeated requests, the Government has refused to provide a log or even categorical descriptions of the Potentially Privileged Materials. Indeed, the Government has even refused to disclose the process it used to select the Potentially Privileged Materials. Messrs. Gentile and Schneider are thus not in a position to carry their burdens at this time—for example, with the submission of a declaration asserting grounds for privilege over specific documents.[6] That said, Messrs. Gentile and Schneider respectfully submit that based on the facts and law outlined below, they have a good-faith basis to object to the Government's proposed procedure and demand the return of the privileged materials.

1.      Mr. Gentile Had Privileged Communications Over GPB Email and with GPB Counsel

First, Mr. Gentile frequently used his GPB email address to consult with his own attorneys. As the 100% owner of GPB, he was not subject to the privacy expectation guidelines in the GPB Capital Employee Handbook as suggested by the Government.[7] Even if he was, courts analyze an employee's expectation of privacy in communications using company emails on a case-by-case basis. "[T]he heart of the overriding question" guiding the Court's analysis is whether the employee's "conduct [was] so careless as to suggest that she was not concerned with the protection of the privilege." *Curto v. Med. World Commc'ns, Inc.*, No. 3-CV-6327 (DRH) (MLO), 2006 WL 1318387, at *5 (E.D.N.Y. May 15, 2006) (upholding magistrate's finding that employee's use of company computer did not waive privilege).

---

are segregated into responsive and non-responsive groups, the "normal" practice is to return the non-responsive items.").

[6] Moreover, it is worth noting that because the Government ran privilege search terms before applying responsiveness search terms, the Potentially Privileged Materials undoubtedly contain non-responsive material for which the Search Warrants did not authorize seizure. Thus, Messrs. Gentile and Schneider do not even know all of the vast potential subject matters within the Potentially Privileged Materials, let alone the specific privileged communications contained therein. This too is a problem of the Government's making.

[7] Further, the purported "employee" handbook cited by the Government is dated November 1, 2014. As a consequence, even assuming arguendo that the Government's point is accurate, the handbook could not have applied to any communications involving "employees" prior to that date, let alone those involving Mr. Gentile.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 8

As GPB's owner, Chairman, and CEO, Mr. Gentile had a more than reasonable expectation that his personal communications using the email address of his own company would be private, especially where the handbook explicitly permitted "personal uses" of GPB technology[8] and where there is no evidence that GPB actually monitored those communications. *See, e.g.*, *United States v. Schwimmer*, 692 F. Supp. 119, 125 (E.D.N.Y. 1988) (finding defendant's "ownership and control of" and "participation in the company's affairs . . . is sufficient for the Court to find that he had a legitimate expectation of privacy in the entire suite of [the company's] offices" for Fourth Amendment purposes); *United States v. Chuang*, 897 F.2d 646, 649 (2d Cir. 1990) ("It is well-settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records."). Mr. Gentile's communications with legal counsel, in particular, were intended to be confidential and he is thus the sole privilege holder for those communications.

The Government argued that "it is unlikely that the Potentially Privileged Materials contain communications with individuals' personal lawyers" because GPB counsel provided the list of attorneys used in segregating documents and "[n]either Gentile nor Schneider ever sought to supplement that list." (Mot. at 7, n.4.) In fact, the Government rejected Defendants' repeated requests to review and supplement the attorney list used by the Government.[9] Nonetheless, we assume that in addition to attorney names, the Government used search terms designed to identify privileged documents (e.g., "privileged and confidential" headings frequently utilized by attorneys for precisely this purpose). Such searches would likely have captured Mr. Gentile's individual privileged communications.

Second, Mr. Gentile had privileged communications about personal matters with attorneys who also at times represented GPB. *See United States v. Daugerdas*, 757 F. Supp. 2d at 370 ("The Court of Appeals recognizes a personal claim of privilege over conversations between a corporate employee and corporate counsel [] where the employee demonstrates that he "sought [] or received legal advice from [counsel] on personal matters." (quoting *United States v. Int'l Bhd. of Teamsters*, 119 F.3d at 216)). Mr. Gentile founded GPB and served as its CEO for over seven years. Over the years, especially when the Company was in its early stages, Mr. Gentile frequently sought legal advice regarding his own liability from attorneys who also represented the Company, in part because his personal matters and those of the Company were inextricably linked. Particularly "in the context of closely-held corporations" such as GPB, courts permit an "individual to assert an individual attorney-client privilege where 'the communication between a corporate officer and corporate counsel specifically focuses upon the individual officer's personal rights and liabilities,

---

[8] *See* GPB Capital Employee Handbook at 17 (Nov. 1, 2014) (previously produced as SEC-EDNY-006455252).

[9] Moreover, the Government's argument that Mr. Schneider did not seek to supplement the list of attorneys provided by GPB is rendered all the more disingenuous by that fact that counsel for Mr. Schneider did provide a list of additional names in the context of the search warrant executed with respect to a Google account the Government contends was associated with Mr. Schneider. Whether the Government also applied those terms to the materials purportedly taken pursuant to the Search Warrants, like many other aspects of the Government's processes at issue here, remains a mystery.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 9

. . . even though the general subject matter of the conversation pertains to matters within the general affairs of the company.'" *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 250 (W.D.N.Y. 2009) (quoting *In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001)); *see also Szulik v. TAG Virgin Islands, Inc.*, No. 12-CV-1827 (PKC), 2013 WL 3989045, at *2 (S.D.N.Y. Aug. 1, 2013) (assuming that "'personal matters' are not limited to matters unrelated to the corporate entity and are broad enough to include an individual's explicit request for legal advice concerning his personal liability for the actions of the corporation.").

> ### 2.   Messrs. Gentile and Schneider Have a Common Interest Privilege in Certain Communications with GPB Counsel

Both Mr. Gentile and Mr. Schneider object to the Government's proposed disclosure based on their common interest privileged relationship with GPB and its counsel. Beginning as early as March 2018, Messrs. Gentile and Schneider were coordinating with GPB in furtherance of their common legal interests in responding to the Government's own investigation, state regulatory investigations, and private lawsuits. *See, e.g.*, *Ferring B.V. v. Fera Pharms., LLC*, No. CV-134640 (SJF) (AKT), 2016 WL 5390876, at *4 (E.D.N.Y. Sept. 27, 2016) (finding common interest privilege applies where defendants "shared a common legal interest at the time of the communications in question, and that the communications were made in the course of formulating a common legal strategy" (internal quotations omitted)); *cf. Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("The common enterprise must be for a legal purpose, and not solely commercial, although it may possibly serve both purposes.").

In connection with those common interests, Messrs. Gentile and Schneider frequently had privileged communications with GPB counsel that are likely included in the Potentially Privileged Materials. The privilege extends even to those periods where Mr. Gentile and/or Mr. Schneider were not independently represented by counsel and to communications in which their individual counsel were not involved. *See United States v. Hatfield*, No. 6-CR-550 (JS), 2010 WL 183522, at *5 (E.D.N.Y. Jan. 8, 2010) ("[A]s joint defense agreements exist between the parties, not the attorneys, unrepresented individuals can enter into and benefit from these kinds of agreements."); *Krug*, 868 F.3d at 87 ("[I]t is not 'necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney' under a common-interest agreement." (quoting *Schwimmer*, 892 F.2d at 244)). Indeed, the agreement has continued through this day, as Mr. Gentile, Mr. Schneider, and GPB continue to jointly defend against, *inter alia*, multiple state and private civil suits. Given the scope and length of this common interest relationship, the Potentially Privileged Materials undoubtedly include many communications for which both Mr. Gentile and Mr. Schneider hold a privilege.

### C.   The Government's Proposed Relief is Improper

To the extent that the Court is considering the primary relief requested by the Government—and Defendants respectfully submits it should not—the Court should direct the Government's Filter Team to conduct an actual review of the Potentially Privileged Materials: (i) first, for responsiveness to ensure that the materials in question are covered by the scope of the warrant; and (ii) second, for its disclosure obligations under Rule 16 and *Brady* and its progeny. Upon taking those steps, the Government then should provide GPB, Mr. Gentile, and/or Mr.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 10

Schneider with a privilege log of materials that it believes satisfy either points (i) or (ii) and/or implicate any potential privilege held by any one (or combination) of those individuals. Should the Government then challenge any privilege claimed by Mr. Gentile and/or Mr. Schneider as to a specific document, the Court should be the ultimate arbiter of that dispute.

The Government argues that its proposal is "the appropriate resolution of the various competing interests at play" because, in part, it would be "ineffective[] to task the Filter Team . . . to review the Potentially Privileged Materials for information that could be useful to the defense." (Mot. at 6.) As a threshold matter and ignoring the privileged nature of the documents, in requesting this authorization, the Government does not—because it cannot—represent that any of these documents are relevant to the preparation of the defense such that disclosure to all defendants is required under Rule 16 or *Brady* and its progeny. Even if the Court were to assume the Government has an applicable production obligation, the Government's proposed relief is improper—as evidenced by the Government's failure to cite any applicable precedent—and is tantamount to a request for Court authorization to abrogate its duty to identify and disclose materials in its possession pursuant to Rule 16 as well as *Brady* and its progeny. The Government chose to seize these materials nearly two and a half years ago and then chose not to review them. It should not now be permitted to shift the burden of its supposed disclosure obligations to the defense by burying the *Brady* needle in a haystack of hundreds of thousands of potentially unresponsive and/or potentially privileged documents.[10] The Government's claim that it is uniquely burdened by a constitutional obligation to produce certain documents ignores the fact that, if indeed such an obligation exists, every prosecutor faces this same quandary when it chooses to seize millions of documents to review after the fact. The Government then seeks to relieve itself of that burden by infringing on Messrs. Gentile and Schneider's rights to have privileged communications with their attorneys. If the Court grants the Government's request, "that right and many other rights belonging to those accused of crime would in large part be rendered meaningless." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). This is not the answer.

---

[10] In segregating the Potentially Privileged Materials for transmittal to its Filter Team, the Government conducted its filter process in a manner that was not reasonably calculated to identify and isolate potentially responsive privileged materials. Rather than running responsiveness search terms against the entire corpus of the materials seized pursuant to the search warrants, and then segregating or returning those that did not hit on those terms, the Government ran privilege search terms first. As a result, it is likely that the privilege search terms—and thus the approximately 146,000 potentially privileged documents—contain information that otherwise would not have been captured by the Government's responsiveness search terms. This further underscores the problem with and invasiveness of the Government's proposed procedure here: the Government is seeking permission to invade privilege on materials that may not even be responsive to the Search Warrants (and thus not properly in the Government's possession), let alone constitute *Brady* material.

Hon. Diane Gujarati, U.S.D.J.
October 7, 2021
Page 11

**IV.**    <u>**Conclusion**</u>

For the reasons set forth herein, we respectfully request that the Court order the return of the Potentially Privileged Materials to GPB.

Dated: New York, New York
October 7, 2021

Sincerely,

/s/ Sean S. Buckley
Sean S. Buckley
Matthew I. Menchel
A. Zoe Bunnell
Alexandria E. Swette
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Sean.Buckley@kobrekim.com
Matthew.Menchel@kobrekim.com
Zoe.Bunnell@kobrekim.com
Alexandria.Swette@kobrekim.com

*Attorneys for David Gentile*